IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

ROSS NEELY SYSTEMS, INC.,               §
                                        §
            Plaintiff,                  §
                                        §
V.                                      §        No. 3:13-cv-1587-M-BN
                                        §
NAVISTAR, INC., ET AL.,                 §
                                        §
            Defendants.                 §

## MEMORANDUM OPINION AND ORDER ON PLAINTIFF'S MOTION FOR LEAVE TO AMEND PLAINTIFF'S SECOND AMENDED COMPLAINT

United States District Judge Barbara M.G. Lynn treated Defendants Navistar, Inc. and Navistar International Corporation's Objections to the Order Granting Motion for Leave to Amend [Dkt. No. 241] and Supplemental Evidence [Dkt. No. 243], as a Motion for Reconsideration and re-referred Plaintiff Ross Neely Systems, Inc.'s Motion for Leave to Amend Plaintiff's Second Amended Complaint [Dkt. No. 217] to the undersigned magistrate judge for further consideration. *See* Dkt. No. 244.

For the reasons explained below, the Court, on reconsideration, DENIES Plaintiff's Motion for Leave to Amend Plaintiff's Second Amended Complaint [Dkt. No. 217].

## Background

Plaintiff filed this action against Defendants on April 24, 2013. *See* Dkt. No. 1. Plaintiff asserted direct causes of action against both Navistar, Inc. ("Inc.") and

Navistar International Corporation ("International"). *See id.* Plaintiff also alleged that "Navistar International Corporation ('Navistar Holdings') is a parent, holding company whose subsidiaries produce heavy-duty commercial trucks"; that "Navistar, Inc. ('Navistar') is a wholly-owned subsidiary of Navistar Holdings"; that, "[b]ased on Navistar Holdings' public statements and official filings with the Securities and Exchange Commission, several of the officers of Navistar Holdings also hold positions as officers and/or directors of Navistar"; that, "[t]hus, Defendants share many of the same decision makers at the highest levels of governance for each of the companies"; and that, "[a]lthough each individual Defendant appears to perform independent functions, Navistar Holdings and Navistar work together in concert to deliver their products to the public, and the 'navistar.com' website contains information regarding truck sales and sales of shares to investors." Dkt. No. 1 at 2.

On May 16, 2013, International filed a motion to dismiss, alleging that Plaintiff's claim against Defendants was based on a relationship between Plaintiff and Inc. and that International was merely a holding company and a distinct legal entity apart from Navistar. *See* Dkt. No. 8.

Plaintiff filed its First Amended Complaint on May 29, 2013, *see* Dkt. No. 11, and the Court then denied Defendants' motions to dismiss as moot, *see* Dkt. No. 15. Plaintiff's amended complaint alleged that "Navistar International Corporation ('Navistar International') is a parent, holding company whose subsidiaries produce heavy-duty commercial trucks"; that "Navistar, Inc. is a wholly-owned subsidiary of Navistar International"; that, "[b]ased on Navistar International's public statements

and official filings with the Securities and Exchange Commission, several of the officers of Navistar International also hold positions as officers and/or directors of Navistar, Inc."; that, "[t]hus, Navistar International and Navistar, Inc. share many of the same decision makers at the highest levels of governance for each of the companies"; and that, "[a]lthough each individual Defendant appears to perform independent functions, Navistar International and Navistar, Inc., acting in complete cooperation with each other and with knowledge of the other's actions, deliver their products to the public, and the 'navistar.com'—operated by Navistar, Inc. and including information from and about Navistar International—website contains information regarding truck sales and sales of shares to investors." Dkt. No. 11 at 2.

Defendants' Original Answer to Plaintiff's First Amended Complaint admitted, "[w]ith respect to Navistar International Corporation's officers, ... that several of the officers also hold position as officers of Navistar, Inc." Dkt. No. 28 at 2.

Defendants also filed another motion to dismiss. *See* Dkt. No. 14. Defendants asserted, in pertinent part:

> Plaintiff still fails to allege the elements that would make a parent company liable for a truck manufactured by a subsidiary. Plaintiff has not even alleged a theory for corporate lines to be blurred. It is unclear what theory is being espoused by plaintiff against the parent company so it is difficult to respond with briefing. It is clear that "[a] bedrock principle of corporate law is that 'a parent corporation…is not liable' for actions taken by its subsidiaries." *Bridas S.A.P.I.C. v. Gov't of Tukm*, 447 F.3d 411, 416 (5th Cir. 2006) (citing *United States v. Bestfoods*, 524 U.S. 51, 61 (1998)). Without plaintiff distinguishing conduct between subsidiary and plaintiff and without plaintiff espousing a theory that would make the parent company liable for the actions of its subsidiary, plaintiff has failed to state a claim against the parent company, Navistar International Corporation.

-3-

Dkt. No. 14 at 2. The Court's February 18, 2014 order granted this motion only in part. *See* Dkt. No. 27. The Court noted that, "[b]ecause Navistar, Inc. is a wholly-owned subsidiary of Navistar International Corporation, the two entities cannot conspire with each other" and further permitted Plaintiff to replead its fraud claims. *Id.* at 1-2.

Around this time, the Court issued its scheduling order on January 31, 2014, setting the case for a jury trial on the Court's two-week docket beginning February 17, 2015 and setting July 17, 2014 at the deadline for filing any amendment of pleadings. *See* Dkt. No. 26 at 1-2.

Plaintiff repleaded its fraud claims on March 18, 2014 in its Second Amended Original Complaint. *See* Dkt. No. 30. Plaintiff's second amended complaint also alleged that "Navistar International Corporation ('Navistar International') is a parent, holding company whose subsidiaries produce heavy-duty commercial trucks"; that "Navistar, Inc. is a wholly owned subsidiary of Navistar International"; that, "[b]ased on Navistar International's public statements and official filings with the U.S. Securities and Exchange Commission ('SEC'), several of the officers of Navistar International also hold positions as officers and/or directors of Navistar, Inc."; that, "[t]hus, Navistar International and Navistar, Inc. share many of the same decision makers at the highest levels of governance for each of the companies"; and that, "[a]lthough each individual Defendant appears to perform independent functions, Navistar International and Navistar, Inc., acting in complete cooperation with each other and with knowledge of the other's actions, deliver their products to the public and the 'navistar.com' website—operated by Navistar, Inc. and including information from and

about Navistar International—contains information regarding truck sales and sales of shares to investors." Dkt. No. 30 at 2.

Defendants' answer to Plaintiff's Second Amended Original Complaint again admitted, "[w]ith respect to Navistar International Corporation's officers, ... that several of the officers also hold position as officers of Navistar, Inc." Dkt. No. 32 at 2.

In response to Plaintiff's Second Amended Original Complaint, Defendants also filed another motion to dismiss, asserting, in pertinent part:

> Plaintiff has failed to distinguish which Defendant, Navistar, Inc. or Navistar International Corporation, made which of the 37 alleged misrepresentations. Instead, Plaintiff has lumped the two distinct corporations together and summarily alleged that both corporations made the same representations to Plaintiff as though they were acting as the same entity. Plaintiff must distinguish the actions of one defendant from another. *See Holmes v. Acceptance Cas. Ins. Co.*, 942 F. Supp. 2d 637, 648 (E.D. Tex. 2013) (citing *Taj Props., LLC v. Zurich Am. Ins. Co.*, 2010 WL 4923473 (S.D. Tex. Nov. 29, 2010)). Plaintiff has not done so, nor has Plaintiff cited or alleged any theory for treating the entities as the same. Further, Plaintiff has failed to allege any elements that make the parent company (Navistar International Corporation) liable for a truck manufactured by its subsidiary (Navistar, Inc.). As such, Plaintiff's causes of action for fraud and fraud by nondisclosure are not sufficient to satisfy the heightened pleadings requirements for fraud.

Dkt. No. 33 at 9. In response, Plaintiff asserted that, "[t]o the extent that a question remains as to whether or not Plaintiff has adequately distinguished between the actions of the Defendants, Plaintiff has, in fact, specifically identified facts that differentiate Navistar International from Navistar, Inc., where possible," citing "Complaint, Paragraphs 139(a) – (kk) (identifying the sources of Misrepresentations as being representatives of Navistar International, Navistar, Inc., or both, e.g. Ramin

Younessi and Daniel Ustian, who were officers of both Navistar International and Navistar, Inc.)." Dkt. No. 37 at 9 & n.42.

The deadline to amend pleadings then passed on July 17, 2014. *See* Dkt. No. 26 at 2. The day before, on July 16, 2014, Plaintiff filed an Unopposed Motion to Modify Scheduling Order, which did not request any extension to the deadline for amending pleadings. *See* Dkt. No. 59. The Court granted that motion on July 18, 2014 but did not continue the February 2015 trial setting. *See* Dkt. No. 61.

On August 18, 2014, the Court denied Defendants' latest motion to dismiss, holding that "Plaintiff has adequately pleaded its claims for fraud and fraud by nondisclosure" and that "Defendants' objections to the merits of Plaintiff's claims are more properly resolved at trial or on summary judgment." Dkt. No. 64 at 1.

Defendants filed their Motion for Summary Judgment on November 17, 2014. *See* Dkt. No. 113. International asserted that "Plaintiff has sued both Navistar, Inc. and Navistar International Corporation"; that International "is a holding company with one employee, who is the CEO of Navistar, Inc."; that International "did not design, manufacture, sell, or distribute the Trucks at issue"; that International "did not offer any warranties on the Trucks"; that "[t]he Trucks were designed and manufactured by Navistar, Inc. and sold by Southland"; that Plaintiff "has failed to circumvent long established principles of corporate law"; that "[a] bedrock principle of corporate law is that a parent corporation is not liable for actions taken by subsidiaries"; that, "[f]urther, no agency relationship exists between NIC and Southland"; that "Southland's dealership contract is with Navistar, Inc."; that "Plaintiff

pleads causes of action for breach of express warranty, breach of implied warranty, breach of contract, and fraud against" International but "[t]he acts and omissions which Plaintiff alleges are not attributable to" International; and that, "[c]onsequently, [International] is entitled to summary judgment on all causes of action asserted by Plaintiff." *Id.* at 2; *see also* Dkt. No. 114 at 7-9.

On January 7, 2015, following very active motion practice regarding discovery matters, the Court entered an Order Continuing Trial and Modifying Scheduling Orders, which extended the discovery deadline and various expert-related deadlines and continued the trial setting to Judge Lynn's two-week docket beginning June 15, 2015. *See* Dkt. No. 159. The Court did not reactivate or reset the July 17, 2014 deadline to amend pleadings, and no party has ever asked the Court to do so.

On March 6, 2015, Plaintiff filed its Motion for Leave to Amend Plaintiff's Second Amended Complaint [Dkt. No. 217], seeking leave to amend its Second Amended Complaint "to add in facts about the unity of corporate organization of the Defendants, and the lack of separateness in the corporations." Dkt. No. 217 at 1-2. Plaintiff's motion specifically notes that, "[o]n January 28, 2015, Defendants submitted their Responses to Plaintiff's First Set of Interrogatories to Defendants Navistar, Inc. and Navistar International Corporation"; "[o]n February 12 and 13, 2015, Plaintiff took the depositions of Navistar International Corporation and Navistar, Inc.'s Corporate Representatives"; "[o]n February 20, 2015, Plaintiff took the deposition of Scott McCandless"; and, "[o]n March 5, 2015, Defendant Navistar International Corporation

submitted its Objections and Responses to Plaintiff's Second Set of Interrogatories."

     *Id.*

     In support of its request for leave to amend, Plaintiff asserts that:

- "[w]hen Plaintiff filed its first and second Amended Complaints (on May 29, 2013 and March 18, 2014, respectively), Defendant Navistar, Inc. had produced only 4,444 pages of documents, mostly containing only documents regarding warranty work on Plaintiff's trucks";

- "[b]y July 17, 2014—the deadline for amending pleadings in this case—Defendant Navistar, Inc. had produced only 4,500 pages more, mostly containing the one warranty document that Defendant Navistar, Inc. had produced at that time";

- "[t]he first documents produced by Navistar International Corporation—the parent company—were produced only after the Court compelled their production, in December 2014";

- "[t]he last four months have seen much activity and discovery in this case";

- "[o]n November 13 and 14, 2014, Plaintiff deposed two former employees in this case, one of which followed Defendants' quashing of deposition notices for James Hebe"; and

- "December and January saw the deposition of the dealer principal for Southland International and, after this Court's December 1 Order compelling production, the production of over 1.3 million pages of documentation produced by

Defendant Navistar, Inc. and 457 pages of documentation produced by Defendant Navistar International Corporation." *Id.* at 2.

Plaintiff seeks leave to file its Third Amended Original Complaint, contending that, "[f]ollowing the depositions of Defendants' Corporate Representatives on February 12 and 13, 2015, and the Deposition of Scott McCandless on February 20, 2015, Plaintiff received the Responses of Navistar International Corporation to Plaintiff's Second Set of Interrogatories; when cross-referenced with the Responses of Navistar, Inc. to Plaintiff's First Set of Interrogatories, Plaintiff has come to the conclusion that the overwhelming evidence provided in the above referenced discovery requires Plaintiff to amend its current live pleading to present facts to the Court regarding Defendants' steadfast claim that Navistar International Corporation is a empty, shell holding company and takes no actions regarding the sales of trucks like those purchased by Plaintiff and receives no benefits either." *Id.* at 2-3.

Plaintiff attached to the Motion for Leave to Amend Plaintiff's Second Amended Complaint [Dkt. No. 217] a Joint Status Report Regarding Plaintiff's Motion for Leave to File Plaintiff's Third Amended Complaint, as required by the Court's Standing Order on Non-Dispositive Motions [Dkt. No. 195], and the joint status report included the response of Defendants Navistar, Inc. and Navistar International Corporation. *See* Dkt. No. 217-3.

Defendants oppose the requested leave to amend and assert that "Plaintiff's proposed amendment would prejudice Defendants" where, "[a]fter almost two years in this lawsuit, Defendants now have to defend against an alter ego claim which will

require additional resources to conduct discovery (to discover all of Plaintiff's bases for such a claim), gather witnesses and evidence to refute such a claim and prepare its defense to that claim for trial"; where, "[c]onsidering discovery closes on April 30, 2015 and trial is set for June 15, 2015, such an endeavor might be impossible"; and where "Defendants' Motion for Summary Judgment, which has been on file since November of 2014, will now have to be amended to encompass the new claims." Dkt. No. 217-3 at 3.

Also on March 6, 2015, Plaintiff filed its response to Defendants' Motion for Summary Judgment [Dkt. No. 113], after several extensions of the response deadline. *See* Dkt. No. 218. Plaintiff's response relies on the alter-ego allegations in its proposed Third Amended Original Complaint. *See* Dkt. No. 219 at 7-12 of 24.

The Court then held oral argument on the motion for leave to amend on March 16, 2015. *See* Dkt. Nos. 225 & 230. Following oral argument, the Court granted Plaintiff's motion for leave in its March 16, 2015 Order Granting Motion for Leave to Amend and Requiring Attorney Conference and Joint Status Report [Dkt. No. 226]. The Court found that, "[u]nder the particular circumstances presented here, ... notwithstanding Defendants' arguments that Plaintiff could have pleaded these allegations sooner, Plaintiff could not have reasonably met the deadline to amend its complaint to assert these additional factual allegations without the discovery responses only recently served by Defendants, that the proposed amendments are important to Plaintiff, that Defendant will not be prejudiced by the proposed amendments in light of the existing deadline for discovery and other scheduling considerations discussed

below, and that leave to amend should be granted here where, the Court finds, justice requires it." Dkt. No. 226 at 4. The Court further explained that it was "not persuaded that [Defendants'] allegations of potential prejudice [noted above] weigh decisively against allowing amendment under the circumstances here," where "[t]he discovery cutoff [was then] still 45 days away, on April 30, 2015," and where, "[a]s the Court discussed with counsel during oral argument, deadlines for discovery and related motions and for supplemental or amended summary judgment briefing can be expedited to ensure that the June 2015 trial date will hold, and the Court finds that they should be." *Id.* at 5. The Court granted the motion for leave and ordered "that Plaintiff is granted leave to file its Third Amended Complaint, as attached as Exhibit 1 to the motion [Dkt. No. 217-1], which is deemed filed as of the date of this order and which the Clerk of the Court is DIRECTED to file." *Id.*

Plaintiff's Third Amended Original Complaint, in pertinent part, adds the following new or amended allegations:

> 9. Based on Navistar International's public statements and official filings with the U.S. Securities and Exchange Commission ("SEC"), all or most of the officers of Navistar International also hold positions as officers and/or directors of Navistar, Inc., and in fact in numerous pleadings, they claim that Navistar International has no operational employees, and has had only one "employee": the CEO of Navistar International, who is also the CEO of Navistar, Inc.
> 10. Navistar International and Navistar, Inc. share common offices and common officers.
> 11. Navistar, Inc. is one of the two apparent operating subsidiaries Navistar International owns.
> 12. Navistar International's investor relations department—dealing with Navistar International's shareholders, market analysts, and the media—is staffed solely by Navistar, Inc. employees.

13. Navistar, Inc.'s former and current employees as well as dealer principals are confused about the difference between Navistar International and Navistar, Inc.

14. Navistar International and Navistar, Inc., acting in complete cooperation with each other and with knowledge of the other's actions, deliver their products to the public and the "navistar.com" website—including information from and about Navistar International—contains information regarding both truck sales and sales of shares to investors.

15. The financial benefit of Navistar, Inc.'s actions accrues solely to the shareholders of Navistar International, and the board of directors of Navistar International (the "NIC Board") "establishes broad corporate policies, sets strategic direction and oversees management, which is responsible for [Navistar International's] day-to-day operations."

16. Navistar International's management employees are also the management employees of Navistar, Inc.

....

**Defendant Navistar, Inc. is an Alter Ego for Defendant Navistar International, and the Two Companies Have Abused the Corporate Form**

**I. Defendant Navistar International has financial interest, ownership and control over Defendant Navistar, Inc.**

111. Defendant Navistar International has claimed, in its Amended Answers, Motions to Dismiss, and Motion for Summary Judgment that Defendant Navistar, Inc. is a wholly-owned subsidiary of a "holding" company, Defendant Navistar International.

112. Defendant Navistar, Inc.'s income is reported on a consolidated return with Defendant Navistar International to the SEC and other entities, presumably the Internal Revenue Service.

113. Defendant Navistar, Inc.'s income is funneled directly to Defendant Navistar International as income from a subsidiary.

114. The financial benefit of Defendant Navistar, Inc.'s actions accrues solely to the shareholders of Defendant Navistar International, and the "NIC Board "establishes broad corporate policies, sets strategic direction and oversees management, which is responsible for [Defendant Navistar International's] day-to-day operations."

115. Thus, Defendant Navistar International has financial interest, ownership and control over Defendant Navistar, Inc. [footnote 3: Navistar, Inc., an Illinois corporation, was organized in 1988, while Navistar International, the parent company, was organized in Delaware in 1993, according to Navistar's own website. Navistar, Inc. appears to have acquired or absorbed several companies in existence prior to Navistar, Inc., including International Truck and Engine Corporation.]

**ii. There is such unity between the two corporations that the separateness of the two corporations has ceased.**

116. According to Defendants' Motion for Summary Judgment and the Declaration of Curt Kramer attached thereto, Defendant Navistar International has "no operational employees," including any management employees, but is instead operated by its subsidiary employees. [footnote 4: It is unclear from the records currently produced if Navistar International reimburses Navistar, Inc. for the salaries or time of these employees.]

117. Defendant Navistar International's most recent quarterly report filed with the SEC on March 3, 2015 states that Navistar's principal operating entities are Defendant Navistar, Inc. and Navistar Financial.

118. Even the "officers" of Defendant Navistar International are those of Defendant Navistar, Inc. According to interrogatory responses served by both Defendant Navistar International and Defendant Navistar, Inc., Defendant Navistar International's only officers are also officers of Defendant Navistar, Inc., and share the same titles.

119. Even Defendant Navistar, Inc.'s own employees, both former and current, do not know the difference between the two companies, and Defendant Navistar International and Defendant Navistar, Inc.'s "common" corporate representative produced for deposition, vice-president of customer support for Defendant Navistar, Inc., recently testified that "if the employees of [Navistar] don't [know the distinction and the difference between Navistar International and Navistar, Inc.], I wouldn't expect the customers to…"

120. Even one of Defendant Navistar, Inc.'s dealer principals didn't understand the difference between the two companies and has recently testified that they wouldn't expect customers to know the difference.

121. Defendant Navistar, Inc. and its financial activities—manufacturing engines and trucks and selling those through its "Dealer Network" —are solely for the benefit of Defendant Navistar International.

122. Defendant Navistar International's most recent quarterly report shows that, of the two subsidiaries—Defendant Navistar, Inc. and Navistar Financial—over 98% of Defendant Navistar International's gross revenues come from Defendant Navistar, Inc.

123. When Defendant Navistar International's "officers" discuss sales of trucks to customers on earnings calls, in press releases, and in analyst presentations—sales made presumably by Navistar, Inc.—it is "our engine volumes" and "our trucks and parts business" that they discuss.

124. As Defendant Navistar International's corporate representative stated, the subsidiary's officers speak on behalf of the

parent company, although he does not understand under what authority they do so.

125. However, the "loss" [or presumably gain] that the shareholders of Defendant Navistar International have is directly related, and is almost solely created, by the subsidiary Defendant Navistar, Inc.

**iii. Holding only Defendant Navistar, Inc. or Defendant Navistar International liable—without the other as well—would result in grave injustice to the Plaintiff.**

126. Statements made by counsel for Defendants seem to indicate that one or the other of the Defendants may be inadequately capitalized, but a review of the most recent consolidated financial statements for Defendants show that the warranty obligations caused by the repairs for the defective parts described herein rests with the subsidiary, while investments and any profits from other manufacturing and from the financial side of the business enterprise are lodged within the parent.

127. Clearly, the corporate form utilized by Defendants here is a sham to perpetrate a fraud. This is a shell game where common officers of the parent and subsidiary make presentations to analysts and investors in order to gain media/customer attention, but—when customers or investors attempt to hold the parent company accountable for those very statements and the direct benefit the parent company and its shareholders obtained from those sales—the parent company points to the subsidiary, which now has inadequate capital alone to withstand the warranty and other obligations that were the direct result of the fraud to begin with.

128. Defendants' combined failure to fully and completely disclose to its shareholders, investors, dealers, and customers I) the extent of the problems it knew it was experiencing with the EGR technology; ii) the resulting defects to the equipment being sold to the public; and iii) its escalating inability to correct those defects, while assuring the public and their customers that the equipment sold was of a high quality and any problems had been and were being solved is actionable actual fraud, common law fraud, and fraud by nondisclosure.

Dkt. Nos. 217-1, 217-2, & 227.

In the March 16, 2015 Order Granting Motion for Leave to Amend and Requiring Attorney Conference and Joint Status Report [Dkt. No. 226], the Court further ordered "counsel for Plaintiff and Defendants to confer in person or by telephone and attempt in good faith to agree on expedited deadlines for serving and

-14-

responding to discovery requests regarding Plaintiff's new alter-ego allegations, for filing and briefing any motion to compel or for a protective order regarding that discovery, and for filing and briefing any supplemental or amended motion for summary judgment that Defendants may file to address these new alter-ego allegations – bearing in mind that the Court has set June 1, 2015 as the deadline for pretrial materials for a June 12, 2015 trial setting." Dkt. No. 226 at 5-6.

The parties did so, and the Court then entered a Supplemental Scheduling Order. *See* Dkt. Nos. 237 & 240.

Defendants then filed Objections to the Order Granting Motion for Leave to Amend [Dkt. No. 241] and Supplemental Evidence in support of their objection [Dkt. No. 243]. After Judge Lynn ordered the objections and supplemental evidence to be treated as a motion to reconsider and re-referred Plaintiff's Motion for Leave to Amend Plaintiff's Second Amended Complaint [Dkt. No. 217] to the undersigned for further consideration, *see* Dkt. No. 244, Plaintiff filed a response to the objections on April 3, 2015, *see* Dkt. No. 253, and the Court held a hearing and oral argument on the motion for leave to amend and motion to reconsider on April 6, 2015, *see* Dkt. No. 259.

## Legal Standards

Because the standards by which the Court evaluates a motion for leave to amend the pleadings vary according to whether the motion was filed before or after the deadline established in the scheduling order, the Court must determine, as an initial matter, whether the motion was filed before or after the deadline. *See, e.g* ., *Orthoflex, Inc. v. Thermotek, Inc.*, Nos. 3:11-cv-08700-D & 3:10-cv-2618-D, 2011 WL 4398279, at

*1 (N.D. Tex. Sept. 21, 2011) ("Motions for leave to amend are typically governed by [Federal Rule of Civil Procedure] 15(a)(2), or, if the time to seek leave to amend has expired, by [Federal Rule of Civil Procedure] 16(b)(4) and then by Rule 15(a)(2).").

When the deadline for seeking leave to amend pleadings has expired, the Court must first determine whether to modify the scheduling order under the Federal Rule of Civil Procedure 16(b)(4) good cause standard. *See S&W Enters., L.L.C. v. SouthTrust Bank of Ala., N.A.*, 315 F.3d 533, 536 (5th Cir. 2003). The Court's scheduling order "may be modified only for good cause and with the judge's consent." FED. R. CIV. P. 16(b)(4). To meet the good cause standard, the party must show that, despite her diligence, she could not reasonably have met the scheduling order deadline. *See S&W*, 315 F.3d at 535. The Court assesses four factors when deciding whether to grant an untimely amendment under Rule 16(b)(4): "'(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice.'" *Id.* at 536 (quoting *Reliance Ins. Co. v. La. Land & Exploration Co.,* 110 F.3d 253, 257 (5th Cir. 1997)).

In the related context of deciding whether to exclude an untimely expert designation, the United States Court of Appeals for the Fifth Circuit, looking to the same four factors, has explained that, if "the first and third factors militate against permitting the testimony, the trial court was not obligated to continue the trial," where, "[o]therwise, the failure to satisfy the rules would never result in exclusion, but only in a continuance," and, "[b]ecause of a trial court's need to control its docket, a

party's violation of the court's scheduling order should not routinely justify a continuance." *Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875, 883-84 (5th Cir. 2004); *see also Reliance Ins. Co. v. La. Land & Exploration Co.,* 110 F.3d 253, 258 (5th Cir. 1997) ("District judges have the power to control their dockets by refusing to give ineffective litigants a second chance to develop their case.").

Moreover, courts "more carefully scrutinize a party's attempt to raise new theories of recovery by amendment when the opposing party has filed a motion for summary judgment." *Parish v. Frazier*, 195 F.3d 761, 764 (5th Cir. 1999) (citations omitted). And, "[w]hen leave to amend is sought after a summary judgment motion has been filed, courts routinely decline to permit the moving party to amend." *Hunsinger v. Sko Brenner American, Inc.*, No. 3:13-cv-988-D, 2014 WL 1462443, at *14 (N.D. Tex. Apr. 15, 2014). As the Fifth Circuit has recognized, "[t]o grant ... leave to amend is potentially to undermine [the non-amending party's] right to prevail on a motion that necessarily was prepared without reference to an unanticipated amended complaint.... A party should not, without adequate grounds, be permitted to avoid summary judgment by the expedient of amending [his] complaint." *Overseas Inns S.A. P.A. v. United States*, 911 F.2d 1146, 1151 (5th Cir. 1990) (internal quotation marks omitted).

The Fifth Circuit very recently invoked this standard in affirming a district court's denial of an untimely amendment to add a new claim, explaining:

> Finally, Squyres sought leave to amend his complaint on August 22, 2013. By that time, the December 31, 2012 deadline to amend pleadings had long since passed. Therefore, because Squyres sought to amend his pleadings after the deadline set in the scheduling order, Squyres had to satisfy Rule 16(b)' s standard and again demonstrate that

he could not reasonably have met this deadline despite exercising diligence. *Filgueira*, 734 F.3d at 422. Citing both Rule 16 and Rule 15, the district court denied Squyres's motion, concluding that Squyres had failed "to show that a third amended complaint should be permitted at this stage in the litigation."

Squyres fails to show good cause for his delay. Squyres's only reason for failing to amend his complaint sooner is that he did not have the basis to allege a fraud claim until after he had deposed Frediani in mid-August 2013. Squyres, however, had informed the district court back in September 2012 that there was a possibility he would amend his complaint to include a fraudulent misrepresentation claim. Despite this knowledge, Squyres then waited almost a year to seek leave to amend his complaint. *See E.E.O.C. v. Serv. Temps Inc.*, 679 F.3d 323, 334 (5th Cir. 2012) (affirming that the district court had acted within its discretion in denying leave to amend because the plaintiff's "reasonable suspicion" of a potential claim "accent[ed] [the plaintiff's] inability to explain the delay" in asking for leave to amend). Even assuming that it was reasonable for Squyres to delay amending his complaint until after he had deposed Frediani, his delay in scheduling Frediani's deposition was self-imposed, as discussed above. *See Lozano v. Ocwen Fed. Bank, FSB*, 489 F.3d 636, 644 (5th Cir. 2007) (affirming the district court's denial of leave to amend under Rule 15 because the plaintiffs "had been aware of the factual underpinnings of the [new] fraud claim for some time, and ... they had not been diligent in pursuing the claim").

In addition to failing to explain his delay (both in seeking leave to amend and in scheduling Frediani's deposition), Squyres also fails to demonstrate that the amendment would have caused no prejudice to Appellees. Because Appellees had sought no discovery related to Squyres's fraud claim, allowing amendment would have imposed additional discovery costs. Moreover, Appellees had already filed their summary judgment motion by the time Squyres sought leave to amend. Thus, not only would the district court have needed to reopen discovery, but it also would have needed to allow another round of dispositive motions. *See Parish v. Frazier*, 195 F.3d 761, 764 (5th Cir. 1999) (per curiam) (noting that this court, even under the more liberal Rule 15 standard, "more carefully scrutinize[s] a party's attempt to raise new theories of recovery by amendment when the opposing party has filed a motion for summary judgment").

Squyres's final argument is that the district court abused its discretion because it ignored his quid pro quo agreement with Appellees. This argument does not help Squyres. For one, the district court was not bound by the parties' agreement and instead had "broad discretion to preserve the integrity and purpose of the pretrial order." *S & W Enters.,*

*L.L.C. v. SouthTrust Bank of Ala ., NA*, 315 F.3d 533, 535 (5th Cir.2003) (internal quotation marks and citation omitted); *see also* Fed. R. Civ. P. 16(b)(4) (stating that a scheduling order "may be modified only for good cause and with the judge's consent " (emphasis added)). Next, it was also not an abuse of discretion for the district court to grant Appellees' motion to amend their answer, but to deny Squyres's motion to amend his complaint. Although the deadline to amend the pleadings had also already passed when Appellees filed their motion for leave to amend, Appellees had not yet filed their summary judgment motion and discovery had not yet closed under the new July 21 deadline. Squyres, on the other hand, did not file his motion until the end of August, after discovery had closed, after Appellees had filed their motion for summary judgment, and just two days before Squyres's response to the summary judgment motion was due. It was therefore not an abuse of discretion for the district court to conclude that Squyres's motion came too late in the litigation.

*Squyres v. Heico Cos., L.L.C.*, ___ F.3d ___, No. 13-11358, 2015 WL 1501050, at *11 (5th Cir. Apr. 2, 2015).

If the movant satisfies these requirements, the Court must then determine whether to grant leave to amend under Federal Rule of Civil Procedure 15(a)(2)'s more liberal standard, which provides that "[t]he court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2); *see S&W*, 315 F.3d at 536. When the party is not subject to an expired deadline for seeking leave to amend, Rule 15(a) requires that leave to amend be granted freely "when justice so requires." FED. R. CIV. P. 15(a)(2). Leave to amend is not automatic, *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005), but the federal rules' policy "is to permit liberal amendment to facilitate determination of claims on the merits and to prevent litigation from becoming a technical exercise in the fine points of pleading," *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981). The Court "may consider a variety of factors" when deciding whether to grant leave to amend, "including undue delay, bad faith or dilatory

motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment." *Jones*, 427 F.3d at 994. But Rule 15(a) provides a "strong presumption in favor of granting leave to amend,"*Fin. Acquisition Partners, LP v. Blackwell*, 440 F.3d 278, 291 (5th Cir. 2006), and the Court must do so "unless there is a substantial reason to deny leave to amend," *Dussouy*, 660 F.2d at 598; *accord Jebaco Inc. v. Harrah's Operating Co. Inc.*, 587 F.3d 314, 322 (5th Cir. 2009) ("leave to amend is to be granted liberally unless the movant has acted in bad faith or with a dilatory motive, granting the motion would cause prejudice, or amendment would be futile").

## Analysis

As the Court previously held, and no party disputes, Plaintiff's motion for leave to amend is untimely under the Court's Amended Scheduling Order. *See* Dkt. No. 26. The deadline to amend pleadings was July 17, 2014, *see id.* at 2, and Plaintiff filed its Motion for Leave to Amend Plaintiff's Second Amended Complaint [Dkt. No. 217] on March 6, 2015, *see* Dkt. No. 217.

Rule 16(b) "governs amendment of pleadings after a scheduling order deadline has expired." *S&W*, 315 F.3d at 536. Turning to the second Rule 16(b) factor first, Defendants do not deny the importance of the amendment to Plaintiff, which weighs in favor of granting leave. Indeed, as noted above, Plaintiff's summary judgment response relies heavily on its new allegations in its Third Amended Original Complaint. *See* Dkt. No. 219 at 7-12 of 24. As Defendants' counsel explained at oral

argument, if Plaintiff is allowed to amend to allege that International is liable for Inc.'s conduct based on an alter-ego theory, International may remain in the case even if it prevails on its summary judgment arguments as to Plaintiff's claims of direct liability against International.

The Court turns, then, to Plaintiff's explanation for failing to timely amend or more timely move for leave to amend. Plaintiff emphasizes that the amendments do not add a new party or claim or cause of action and explains that it could not earlier amend or move for leave to amend – at least not without facing stiff opposition by Defendants – to add its new alter-ego allegations until it had learned more information through recent depositions and interrogatory responses. *See* Dkt. No 217; Dkt. No. 253. But Plaintiff's counsel acknowledged at oral argument that no documents produced by Defendants actually lend support to the alter-ego allegations – and so, the Court finds, Plaintiff's assertions regarding Defendants' document production do not provide any explanation for Plaintiff's not amending or moving for leave earlier.

The Court has carefully scrutinized Plaintiff's explanation by reviewing its new allegations against the information that Plaintiff reports that it recently learned in discovery, including through several depositions and Defendants' interrogatory responses identifying their respective officers.

The Court notes that Plaintiff's and Defendants' counsel agree that Delaware law will govern any alter-ego allegations against Defendants, which are Delaware corporations. *See* Dkt. No. 30 at 1; Dkt. No. 32 at 2; Dkt. No. 255 at 4; *Alberto v.*

*Diversified Group, Inc.*, 55 F.3d 201, 203 (5th Cir. 1995); *Weaver v. Kellogg*, 216 B.R. 563, 585 (S.D. Tex. 1997).

Now-Chief Bankruptcy Judge Barbara J. Houser has summarized Delaware's alter ego law as follows:

> Delaware law provides clear requirements for veil piercing, and the case law reveals that to pierce the corporate veil based upon an alter ego theory, a plaintiff must demonstrate a misuse of the corporate form along with an overall element of injustice or unfairness. However, the plaintiff need not prove actual fraud – "the standard may be restated as whether the two entities operated as a single economic entity such that it would be inequitable for the Court to uphold a legal distinction between them." In short, the test applied under Delaware law is two pronged: (I) whether the entities in question operated as a single economic entity, and (ii) whether there was an overall element of injustice or unfairness. This two pronged test was recently described by the Second Circuit as follows:
>
>> Stated generally, the inquiry initially focuses on whether those in control of a corporation did not treat the corporation as a distinct entity; and, if they did not, the court then seeks to evaluate the specific facts with a standard of fraud or misuse or some other general term of reproach in mind, such as whether the corporation was used to engage in conduct that was inequitable, or prohibited, or an unfair trade practice, or illegal.
>
> With respect to the first prong of the veil piercing test – i.e., whether the entities operated as a single economic entity, the factors to be considered in deciding this question include: (1) whether the entity was adequately capitalized for the corporate undertaking; (2) whether the entity was solvent; (3) whether dividends were paid, corporate records kept, officers and directors functioned properly, and other corporate formalities were observed; (4) whether the dominant interest holder siphoned corporate funds; and (5) whether, in general, the corporation simply functioned as a facade for the dominant interest holder. No single factor can justify a decision to disregard the corporate entity, and Delaware law requires a "strong case to induce a court of equity to consider two corporations as one." ....
>
> And, with respect to the second prong of the alter ego veil piercing test – i.e., whether there was an overall element of injustice or unfairness, the " 'underlying cause of action, at least by itself, does not supply the necessary fraud and injustice'." The party seeking to pierce the

corporate veil "need not prove that the corporation was created with fraud or unfairness in mind. It is sufficient to prove that it was so used." As explained by the Second Circuit in *NetJets Aviation*:

> the claimed injustice must consist of more than merely the tort or breach of contract that is the basis of the plaintiff's lawsuit: The underlying cause of action does not supply the necessary fraud or injustice. To hold otherwise would render the fraud or injustice element meaningless. This proposition has been endorsed by the Delaware courts. But nothing prevents a court, in determining whether there is sufficient evidence of fraud or unfairness, from taking into account relevant evidence that is also pertinent to the question of whether the two entities in question functioned as one.

*In re The Heritage Organization, L.L.C.*, 413 B.R. 438, 512-13 (Bankr. N.D. Tex. 2009) (citations and footnote omitted). Faced with this standard, Plaintiff alleges in its Third Amended Original Complaint various facts attempting to meet this standard.

But a careful review of the new allegations and comparison of those allegations with what Plaintiff's amended complaints previously alleged and what Plaintiff's counsel indisputedly already knew well before moving for leave now reveals what Plaintiff's counsel effectively admitted at oral argument: The only new facts that Plaintiff learned recently in discovery and added into the new alter-ego allegations are that all of International's officers are also Inc.'s officers and that at least some of Defendants' employees and dealers do not know the difference between the two companies. Plaintiff contends that it "promptly filed its Motion for Leave to Amend once it had ascertained – with verified certainty – that the relationship between the two Defendants merited allegations of facts regarding alter ego, that the two Defendants shared not only common officers and directors, but that employees acted on behalf of the two companies, moving freely at will between the two – so much so

that the employees themselves were confused about the relationship between the two companies." Dkt. No. 253 at 4. Plaintiff further asserts that it seeks to add factual allegations "regarding the interrelationship between the two Defendants – for among other reasons, because Plaintiff has learned exactly how high the warranty costs for Defendant Navistar, Inc. have and will be" – and "fears that any judgment against Navistar, Inc. will be met with a hollow purse, since Navistar International is the entity that sells shares of the company, and appears to gain profits or revenue from its subsidiaries." *Id.* at 1-2.

But Defendants have long admitted in their answers that several of International's officers are also officers of Inc., such that Plaintiff could have relied on that fact in support of alleging an alter-ego theory of liability against International long ago. *See* Dkt. No. 28 at 2; Dkt. No. 32 at 2. Complete identity of two companies' officers or directors does not appear to be necessary or, for that matter, sufficient to allege alter-ego liability under Delaware law.

Further, Defendants' own summary judgment evidence – specifically, an unsworn declarations under penalty of perjury pursuant to 28 U.S.C.§ 1746 – stated that International had only one employee. *See* Dkt. No. 115-1, Ex. 5 at 1. Insofar as Plaintiff believed it needed to know that International relied on another company's employees, Plaintiff could have at least moved for leave to amend after receiving this information in November 2014.

And, while at least one Delaware court has found confusion about the distinction between companies can support a finding that the companies operate as a single

economic entity such that it would be inequitable to uphold a legal distinction between them, *see Microsoft Corp. v. Amphus, Inc.*, C.A. No. 8092–VCP, 2013 WL 5899003, at *6-*7 (Del. Ch. Oct. 31, 2013), the fact of some customers', employees', and dealers' confusion, obtained through deposition testimony in the last few months, does not alone appear to justify Plaintiff's waiting until filing its summary judgment response to seek to amend to add allegations that Defendants operated as a single economic entity, where Plaintiff has, since the time of filing its original complaint, raised related factual allegations, *see* Dkt. No. 1 at 2; Dkt. No. 11 at 2; Dkt. No. 30 at 2.

That leaves Plaintiff's new allegations directed to whether there was an overall element of injustice or unfairness, as to which Plaintiff contends that International will claim that Inc. alone has any warranty liability and that Plaintiff fears that it will find Inc. to be an hollow purse. Plaintiff's counsel asserted at oral argument that Plaintiff could not plead these alter-ego allegations on mere information and belief. And Plaintiff explains that "Navistar International corporate representative Mark Reiter testified that the warranty adjustments during the first two quarters of 2012 reported to Navistar International totaled close to $250 million, the largest he had ever seen" and that "[t]he warrantor for both warranties on the 2011-2013 MaxxForce Pro Stars appears [to be] Navistar, Inc., while revenue for any truck sales or sales by any other divisions or subsidiaries is claimed in earnings calls and consolidated financials by Navistar International." Dkt. No. 253 at 3 n.5. In essence, Plaintiff asserts that it could not adequately plead an alter-ego theory of liability until learning the amount of Inc.'s warranty adjustments in 2012.

But the Third Amended Original Complaint does not actually plead that fact. *See* Dkt. Nos. 217-1, 217-2, & 227. And Plaintiff has not explained what factual basis it has recently learned for exactly how high the warranty costs for Inc. will be, as opposed to how high they may have been a few years ago. Further, it is not the case that fraud or alter ego liability may never be pleaded on information and belief – rather, fraud may be pleaded on information and belief where the facts relating to the alleged fraud are peculiarly within the alleged perpetrator's knowledge (although, even then, the complaint must set forth a factual basis for such belief). *See ABC Arbitrage Plaintiffs Group v. Tchuruk*, 291 F.3d 336, 350 n.67 (5th Cir. 2002); *Lincoln Gen. Ins. Co. v. U.S. Auto Ins. Servs.*, No. 3:07-cv-1985-B, 2009 WL 1174641, at *7 (N.D. Tex. Apr. 29, 2009).

Plaintiff's counsel admittedly has been considering raising alter-ego allegations for some time and has sought to obtain relevant information in discovery. Well before the amendment deadline, Defendants repeatedly pointed out that Plaintiff had not alleged any theory to hold International liable for Inc. or any truck that Inc. manufactured. *See* Dkt. No. 14 at 2; Dkt. No. 33 at 9. Yet, Plaintiff did not even seek to amend after Defendants filed their summary judgment motion in November 2014 but rather only sought leave almost five months later and just over three months prior to the already continued trial setting. And Plaintiff did so to raise a new theory of liability in opposition to International's motion seeking summary judgment on the existing claims and theories of liability against it. *See* Dkt. No. 219 at 7-12 of 24.

On reconsideration, the Court finds that Plaintiff has failed to show that, despite its diligence, it could not reasonably have amended to add these allegations before the deadline or, at least, moved earlier for leave to amend – where length of delay in seeking leave for an untimely amendment is a relevant consideration. The Court therefore finds that the first Rule 16(b)(4) factor, the explanation for the failure to timely move for leave to amend, weighs against permitting this late amendment.

As to the third factor, potential prejudice in allowing the amendment, the Court reconsiders its prior finding that Defendant will not be prejudiced by the proposed amendments in light of the existing deadline for discovery and other scheduling considerations.

As the Court previously noted, discovery is still open in this case until April 30, 2015. And Plaintiff's counsel noted that that presents a somewhat unusual situation, where discovery is generally closed before summary judgment motions are filed.

But, without having offered adequate grounds for seeking leave at this late date, the Court finds that Defendant will be prejudiced if Plaintiff is permitted leave to amend. Allowing Plaintiff to pursue this newly alleged theory of liability against International will significantly expand the scope of discovery in a very compressed period (as Plaintiff's served discovery requests bear out, *see* Dkt. Nos. 243, 254, 255, & 256), will increase litigation costs to conduct that discovery and supplemental summary judgment practice, and will potentially undermine International's right to prevail on a motion that necessarily was prepared without reference to an unanticipated amended complaint – indeed, one that Defendants essentially long

suggested that Plaintiff should file if it could but which Plaintiff did not seek to file until several months after Defendants filed their summary judgment motion. *See Squyres*, 2015 WL 1501050, at *11; *Overseas*, 911 F.2d at 1151. Accordingly, the Court finds that the third factor weighs against granting leave to amend.

As to the fourth Rule 16(b)(4) factor, the Court previously determined that granting leave did not require a continuance, and Plaintiff's counsel stated at oral argument that Plaintiff does not seek one. But, to the extent that Plaintiff asserts that any prejudice could and should be cured by a continuance if necessary, the Court rejects that assertion. Where, as here, the first and third factors militate against granting leave for an untimely amendment, the Court is not required to continue the trial and finds that it should not, where, "[o]therwise, the failure to satisfy the rules would never result in exclusion, but only in a continuance" and where, "[b]ecause of a trial court's need to control its docket, a party's violation of the court's scheduling order should not routinely justify a continuance." *Hamburger*, 361 F.3d at 883-84.

## Conclusion

The Court DENIES Plaintiff's Motion for Leave to Amend Plaintiff's Second Amended Complaint [Dkt. No. 217], VACATES its March 16, 2015 Order Granting Motion for Leave to Amend and Requiring Attorney Conference and Joint Status Report [Dkt. No. 226] and Supplemental Scheduling Order [Dkt. No. 240], and ORDERS that Plaintiff's Third Amended Original Complaint [Dkt. No. 227] shall be unfiled and this case will proceed on Plaintiff's Second Amended Original Complaint

[Dkt. No. 30]. The Clerk of Court is directed to note on the docket that Plaintiff's Third Amended Original Complaint [Dkt. No. 227] has been unfiled.

In light of these rulings, the Court further GRANTS Defendants Navistar, Inc. and Navistar International Corporation's Motion for Protective Order Pursuant to Rule 26(c) [Dkt. No. 254] insofar as, in light of the Court's denying leave to amend to add alter-ego allegations, the Court will hereby grant a protective order protecting Defendants from responding to Plaintiff's alter-ego-related discovery in its Sixth Requests for Production to Defendants and its request for the depositions of Walter G. Borst, Troy A. Clarke and Curt A. Kramer.

SO ORDERED.

DATED: April 8, 2015

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE